Good morning, Your Honors. May it please the Court, I'm Ina Lipkin on behalf of the petitioner. The central issue in this case is whether the petitioner can safely relocate internally within India. And why can't he? Well, Your Honor, based on his credible testimony, he with the Khalistan Movement for an Independent Sikh State, and specifically alleged that he has terrorist links. And this was based on his familial tie with a terrorist. In other words, his sister was married to a man named Rajpal, whose brother was a terrorist. I forget all that at the moment. What did they say about him? Was he an ordinary terrorist, or was he more? You know, on page 176 of the record, he stated that they accused him of being, quote, chief of the Khalistan and the terrorist group, unquote. And they also alleged that he instigated youth for Khalistan, which is something that the Indian police view as being anti-national. As far as the legal aspect of the reports, and which he was lying, if he's just an ordinary terrorist, don't the reports say that they will not pursue him into other parts of the country? Well, I think the reports indicate that if an individual is viewed to be a terrorist, then the police are more likely to pursue him throughout the country. But his relative, who was the terrorist, to whom he gave money, and one of the reasons they were after him, this is some years ago, has gone back to India a couple of times, hasn't he? And not been disturbed. No, actually the facts are that his brother-in-law, Rajpal, who's married to the sister, he is a United States citizen, and he received asylum status. It was his brother who was the actual member of the Khalistan commando force and a terrorist who was gunned down in 91 or 93. So his actual relative was not the terrorist. And I think that it is worth noting that both the IJ and the board relied on this familial tie to state, well since Rajpal returned a few times without incident, then the petitioner can as well. But in fact, Rajpal was not similarly situated. First of all, he's got United States citizenship that means he could leave at a moment's notice. There are U.S. embassies to protect him should he encounter problems with the police. And then the main thing that both bodies ignored was that Rajpal, who testified in the proceedings, stated that when he last went to India, his uncle informed him that the police had gone to the house, found out that he had returned, started to inquire about him, and the uncle somehow was able to negotiate or to somehow prevent the police from coming, allowing Rajpal to return back to the United States. Let me get your take on one aspect of that though. I'm looking at the, where is it in the record, it's 176, and your client indicates to the question, how long were you kept in police custody? He says 14 days. And then they said, and with what frequency were you beaten? And his answer was, sir, they would beat me up in the morning, evening, and especially at night when they used to drink. The police people, they would come and strip me naked, and this is the key part. And then they would ridicule me as the chief of the calistan and the terrorist group. That kind of behavior. And yet, they released him 14 days later. Does this make any sense at all, that if they really believed, they weren't just making fun of him, he said ridiculed, I view that as being, they're making fun of him. Because you know, he really wasn't, they knew he really wasn't. They were really the chief, how could, how would they possibly release him from custody 14 days later? Well your honor, this court has stated on a number of occasions that a mixed motive does not negate that the persecuting entity does target an alien due to, you know, an underlining imputed political opinion. Okay, but here, I respect that, but in this case, this guy's clearly not a terrorist, he's never been a terrorist, never been involved as a terrorist, he's got a brother-in-law who was, allegedly. So he's got a family tie. The BIA chose not to go on the credibility element of this, just went on the relocation. Doesn't the whole thing turn on this very point, whether the ridicule was for fun, or whether they really thought he was? Well your honor, in this case, this court should remand to allow for clarification because I don't believe that he was asked to explain that in front of the IJ. And because the board chose to assume credibility and that past persecution was established, I don't think that we can then speculate that the police were motivated by money only. Or that they didn't really believe that he had any kind of terrorist affiliation. What's our standard of review here? Isn't it substantial evidence? Yes. And the BIA, evidence was introduced that non-politically active Sikhs could easily find a place to live peacefully and without interference in many places in India. What is your response to that? The fact is here, the police did impute a political anti-national opinion onto him. So it doesn't matter, it is irrelevant whether he had a political opinion or not. In fact he did not have a political opinion. But because the police held him to have one, one that is tied to terrorist ideology, then they would be motivated to search him out throughout the country. And he submitted evidence that there are landlord-tenant verification systems that would subject him to be located. How long ago did the police impute this opinion to him? Well I think he was last in India in 2005. In January that was his second and last arrest. Later that year he fled. And the hearing spanned a couple of years. I believe the decision was in 07. So at the very least I think remand is necessary. It's been five, six years since his last hearing. And he should be given an opportunity to supplement the record with evidence as to what extent country conditions have changed. If we send it back, do we send it back on an open record so that the BIA, or not BIA, but the government before NIJ could also revisit the credibility issue? Well I think because the board did not make any credibility issue, I think Kataria, BINS, we've got to take his testimony as credible. As of now, but if it goes back, Judge Smith is saying, because the board didn't make the credibility determination. It didn't find him credible. It just didn't rely on that determination by the IJ. So it left it open. I think in reality when a case is remanded before an IJ and the record then opens up for new testimony, credibility always again becomes a factor. Also new country reports. Is that correct? New country reports from both the petitioner and the government. Again, it's been six years since he left India. I'll reserve the remaining time. May it please the court. My name is Jesse Lorenz and I'm appearing on behalf of the United States Attorney General. The main question before this court is whether the record evidence compels the collusion, contrary to that reached by the board, that petitioner could avoid future harm by internally relocating within India and that it would be reasonable under the circumstances present in this case for him to do so. Where an applicant for asylum has established past persecution, such as the board assumed arguendo here, DHS may rebut the presumption of a well-founded fear of future persecution if it demonstrates by preponderance of the evidence, first, that the applicant could avoid future persecution by relocating to another part of the country, and two, that it would be reasonable, given the circumstances, for him to do so. In the present case, record evidence does not compel a conclusion contrary to that reached by the board. First, the record demonstrates that petitioner could avoid future harm by relocating within India. There was a lot of record or country conditions evidence submitted by the Department of Homeland Security and that evidence establishes that the Indian law provides for freedom of movement and that the Indian government generally respected that right, that there are four million Sikhs residing outside of the Punjab region and that they lead tranquil and productive lives. Which Sikhs cannot relocate without fear of the persecution because of their activities? Well, Your Honor, the record suggests that the only individuals that would have any concern of relocating outside of Punjab are high-profile terrorists and Mr. Singh in this case is certainly not a high-profile terrorist. As he admitted before the immigration judge, he did not hold any political opinion and was never associated besides this attenuated association. The question isn't what his opinion was, the question is how was he viewed under imputed political opinion? Your Honor, there is no record evidence that he was viewed as anything other than a relative, a distant relative of... What about the testimony that Judge Smith was talking about, that they ridiculed him as a leader of the Khalistan group? Well, Your Honor, it's just that they were ridiculing him, they were making fun of him. If his testimony... Because he was a leader of the group? Well, Your Honor, there's no evidence that he was in fact viewed as a leader of the group or that... That's the evidence. The evidence is that they ridiculed him as a leader of the group. Now that could mean possibly two things. They said, you're a monkey and he's not a monkey. You're a leader of the group and he's not a leader of the group. Or, because he was a leader of the group, they ridiculed him. Yes, Your Honor, I understand what you're saying, but the record just doesn't... There's no evidence in the record that suggests that anybody thought he was a leader of the group. Other than that statement that they ridiculed him as a leader of the group. Yes, yes, Your Honor, that's the only statement that's there, but... Well, they also accused him of giving money to promote terrorism. Yes, Your Honor. And that's a problem even in the United States, isn't it? And he admitted, or he said that he did not give money to the group himself. It was his brother-in-law, his brother-in-law who lives in Seattle. But he transferred the money. He gave the group, even his brother-in-law's money. But he's the one who gave the money to support the terrorists. They say here that you gave money, you put the pictures up, makes the youth in the village more aggressive, and they become the terrorists. You are working against us. Yes, Your Honor, that was his allegation, and the board believed his testimony, or accredited his testimony, not necessarily believed it, but they assume that he established past persecution. So the only issue before this court is whether DHS rebutted that presumption. It's more than a rebuttal. The DHS has the burden approved, has it not? Yes. By substantial evidence, by preponderance, that in fact he can relocate in another part of the country without harm. Yes, Your Honor. Given the allegations about which there is no ambiguity, and that is their belief that he gave money and that he excited the young people in the village to side with the terrorists, isn't that sufficient to show that the government did not bear its burden to overcome the presumption of future persecution in light of the admitted past persecution, at least is what was taken as credible? Well, respectfully, Your Honor, I disagree because the evidence exists that he could relocate outside of the Punjab region. His fear seems to be tied directly to that house in that village in the Punjab region. There's no evidence on the record that the police would look for him. In fact, the record suggests that the police would not look for him outside of the Punjab region. Maybe I'm thinking of another case, but I thought there was evidence that, at least through his brother-in-law, who was the terrorist, who testified that there was recent inquiries. I think he had other family members that said the police had said, if you come back here, they're going to kill him. Is that correct? Your Honor, there was no allegation that he was killed. In fact— No, I know he's still alive. He's a petitioner here. But I'm just saying, they said that if he did come back, they're going to kill him. There was no allegation that the brother-in-law alleged that he'd be killed. In fact, the police came, it seems, to look for his brother-in-law to shake him down for money, was his own testimony. Also, he willingly returned to India, which was a significant factor to the board. He willingly returned to India in 2005 after this whole incident with the poster and the media, to the same village in November of 2005, which the board relied on heavily here, which suggests that Mr. Singh does not have any reasonable fear of persecution. Let me put it this way. Let's assume, arguendo, that the balance here, it's truly an equipose. It's ambiguous because of the ridicule, comment, and so on. And yes, there are places, they're by Sikhs outside of the Punjab area that they're being persecuted and so on. But there seems to be a clear exception for people that are viewed as terrorists. There's been some evidence that's been put on here that suggests that the government, at least some people in the government, view him as at least an auxiliary terrorist, helped with money and whipped people up into rebellion. What do we do in that case? Do we send it back on an open record? What do we do? Well, Your Honor, I do not believe that remand is necessary here. Because, again- If things are an equipose, which by definition means the government has not met its burden. Well, Your Honor, they're not an equipose here. It's substantial evidence that- I was glad there was if, can you answer the question? Sorry. Your Honor, the evidence here suggests, or compels, or doesn't compel, I'm sorry, suggests that he could relocate outside of the Punjab region. If we assume- Counsel, listen to me carefully, please. I understand what you're saying. I understand what your position is. But that's not my question. My question is, if this panel views this matter as being an equipose, which means that the government has not met its burden. But it's not a black and white case at all. If we were to send it back, would it be on an open record to do the whole thing all over again? Would we be restricted to send it back on the sole issue of relocation within country? Well, Your Honor, you would be allowed to send it back. Usually when the court remands, it's to remand on the whole record. And if the board accepted- I suppose it would be up to the board in that situation. If the board chose to open it up and allow petitioners to submit evidence, that would be its right to do so. But, Your Honor, I do not believe that remand is necessary in this case. No, I get that. I think you're not giving the board enough flexibility. The board would have to consider the issues that it assumed, wouldn't it? Your Honor, not necessarily. So they'll just give them credibility? Well- They passed it by the first term. They didn't- That, you say, is not something they can consider? Your Honor, I believe if they chose to reconsider his credibility, they could do that. If they chose not to, here they didn't have to consider the issue of past persecution. If they only wanted to consider the issue of future persecution, that was their right to do so in this case. They didn't need to consider- So are you saying that if we remanded, it should only be on the third issue that they did consider? The third issue? The one we've been discussing. The internal- Oh, I see. The internal relocation. Is that the only thing it would be remanded on? Your Honor, like I said, it would kind of be up to this court to decide what it wanted. The board also could decide then if it wanted more testimony and more evidence. But forget the testimony and evidence. Let's just say we remanded it and asked them now to reopen the case. Are you saying it's up to them or up to us as to whether they now consider the first two issues of credibility and the past persecution or future persecution? If this court remanded for the sole issue of the third issue, then I think the board may be limited to that, but it also, if it chose, could reopen. What do you think we should do if Judge Smith's question that we are in Justice Breyer's theoretical state of equipoise, if we reach that conclusion, what should we do about remanding? Well, Your Honor, first of all, I don't think you should reach that conclusion. If we do understand that, you must have said it ten times by now. But just take an if. Have you ever heard of a hypothetical question? Yes, Your Honor. Okay. Now, let's pretend we have a hypothetical question, which is that we found you in this mysterious state of equipoise. What kind of a remand do you say we should make? Your Honor, I do not feel comfortable answering that question for the court. Okay. All right. Well, you've used your time anyway. Thank you very much. We'll let Justice Breyer know that you're not comfortable in the state of equipoise. I think I'll let it rest on this, unless the panel has anything else. Thank you. Thank you both very much. The case is arguably submitted.
judges: Nelson, Reinhardt, Smith